## CITY OF SAN ANTONIO v. W. G. LANE.

1—The case of San Antonio v. Enoch Jones (28 Tex., 19) cited and approved.

2—If the plaintiff was the same person in this case as in that just referred to, the judgment would be affirmed on the ground that a judgment in favor of a *bona fide* holder, on certain municipal bonds, part of a larger issue, against the corporation issuing them, is conclusive of the validity of the entire issue—all objections having been as available in the former suit as in this one.

3—It is assumed as well settled that the State Legislature may authorize municipal corporations to subscribe for stock in railroad companies, and to provide for the payment of such subscriptions in any manner not repugnant to the constitution.

4—When an act of the Legislature expresses in its title the object of the act, the title embraces and expresses all lawful means to accomplish that object; and, therefore, the specification in the body of the act of the means by which the object may be accomplished does not render the act obnoxious to the constitutional requirement that every law shall embrace but one object, which object shall be expressed in its title. (See Reporter's note, below.)

5—The case of Cannon v. Hemphill (7 Tex., 208), does not contravene the foregoing principle.

6—Bonds or coupons of the character indicated are negotiable instruments, transferable by delivery, and therefore a *bona fide* holder can not be held responsible for any misconduct or default of the parties issuing them, for such holder may well presume that every condition precedent to their lawful issuance has been complied with by such parties.

7—Such a holder is chargeable only with knowledge of the law authorizing the issue of such bonds.

8—Interest coupons carry interest like any other commercial paper.

9—A contract made by a corporation is presumed to be on sufficient consideration, until the contrary appears.

10—It is not always error for the court to instruct a jury which party is entitled to their verdict. If there is no evidence, or if the evidence be all on one side, and be sufficient, or when the question is purely one of law, and the verdict is a mere matter of form, such an instruction is no infraction of Art. 1469, Paschal's Digest. The rigorous rule on this question laid down in the early case of Reynolds v. Williams (1 Tex., 313), has been greatly relaxed in the more recent decisions.

NOTE BY THE REPORTER.—Since this decision, the Supreme Court organ-

ized under the constitution of 1869 has, in the case of San Antonio v. Gould, held the act of the Legislature, here considered and sustained, to be unconstitutional, for the reason that it comprises more than one object.

Error from Bexar.    Tried below before the Hon. Thomas H. Stribling.

This suit was brought to the Fall term (1866) of the District Court of Bexar county; and was tried at the Fall term, 1868, resulting in judgment for the plaintiff, Lane, who is defendant in error.

In the reported case of San Antonio v. Jones, 28 Texas, 19, will be found the sections of the legislative act incorporating the railroad company, and also all other matters having any relevancy to the questions discussed and decided in this case. No statement of facts was brought up in this case.

*Edmund J. Davis*, for the plaintiff in error.—1. A valuable consideration is requisite.    Where this is recited in the instrument sued on, its existence would be *prima facie* presumed; but where it is not expressed in the instrument sued on, or admitted by the pleadings, proof of its existence must be adduced by the plaintiff.    (Short v. Price, 17 Texas, 403.) In this case, neither the coupons or bonds say anything of a consideration.    The court, therefore, erred in refusing to sustain the demurrer to the petition, and also erred in refusing the ninth charge asked by defendant below.

2. The act of the Legislature of September 5th, 1850, (see acts of Third Legislature, extra session, incorporating "the San Antonio Railroad Company"), under which these bonds and coupons purport to have been issued, was unconstitutional —at any rate, to the extent of the provisions of section 12 thereof.    The provisions of said section 12 were not embraced or expressed in the title of the said act, but were varient, and were, in effect, an enlargement of the charter of the city of San Antonio, and of the powers of the mayor and board of aldermen thereof.    Said section 12 also provided for an elec-

tion by the voters of said city, and for various other and sundry purposes. (See § 12 of act.) The act is entitled "an act to incorporate the San Antonio Railroad Company." This act was in evidence on the trial of this case, as is apparent from bill of exceptions of defendant below. The act is unconstitutional and void, as it clearly conflicts with sections 24 and 25 of Art. 7 of the constitution of 1845. (Cannon v. Hemphill, 7 Texas, 208.) It embraces more than one object, and contains matters varient from and not expressed in its title. It may be held that the whole act is not void, but only that part which is varient from or not expressed in the title, as was held in Georgia under a similar provision. (Mayor v. The State of Georgia, 4 Ga., 38.) In any event, this 12th section of said act is unconstitutional and void.

3. The court erred in ruling out the evidence offered by defendant below, to show that two-thirds of the qualified electors of the city of San Antonio had not voted in accordance with the provisions of said section 12 of the act. The court seems to have proceeded on the ground that defendant below had not sufficiently set it out in his answer. But the plaintiff below had in his amended petition set up this charter of the railroad company, and claimed that these coupons (plaintiff's cause of action below) were issued in pursuance of said charter, and it seems, from the bill of exceptions of defendant below, as well as the charges asked by defendant, and the charge as given by the court, that the 12th section of this charter was given in evidence by plaintiff; and in that case it was clearly competent in the defendant to show by evidence that the 12th section of said act had not been complied with. While on this subject we will consider the other points raised by the charges asked by defendant below. Surely the people of the city of San Antonio are not responsible for these bonds and coupons, if they were issued without a full compliance with the law, or if issued by the mayor, without authority of law, the principle is the same. If the mayor could dispense with the requirements of a notice of twenty days, he could dispense with notice altogether. If,

in his notice of the election, the mayor could require qualifications for the voters which are not prescribed in the constitution of the State, (Art. 3, § 1, constitution of 1845), he could as well dispense with all voters. He could as well do this as restrict the number to a select few, as he appears to have done. The people of a city are not bound by the acts of their agents, outside of the limits of their delegated authority. (Clark v. Corporation of Washington, 12 Wheaton, p. 49.) The principles of law governing the validity of the bonds and coupons issued by the city of San Antonio to the said railroad company in pursuance of the said charter, has been decided, and the city of San Antonio is entitled to have them all adjudged void. (See Henderson v. Railroad Company, 17 Tex. R., 560 to 582 inclusive.)

Where a corporation relies upon a grant of power from the Legislature for authority to do an act, it is as much restricted to the *mode* prescribed by the statute or charter for its exercise as to the thing allowed to be done. (Farmers' Loan and Trust Company v. Carroll, 5 Barb. N. Y. R., 613.) Without a strict compliance with the said section 12 of the railroad charter, and unless two-thirds of the qualified electors voted in favor of the issuance of these bonds and coupons, the mayor had no authority, express or implied, not even under the common law, to issue them. (Clark v. The City of Rochester, 13 Howard Prac. R., p. 204; Boon v. The City of Utica, 3 Barb., p. 104.) As has been said by the Supreme Court of the United States: "The exercise of the corporate franchise, being restrictive of individual rights, can not be extended beyond the letter and spirit of the act of incorporation." (Beatty v. Lessee of Knowler, 4 Peters' R., 152; Jackson v. Ostrander, 1 Cowan's N. Y. R., 686; Utica Insurance Company v. Scott, 19 Johns' N. Y. R., 1.) Again, it appears from the record that the election was held on the same day as that for mayor and aldermen; but this sort of election was not in conformity with the intent, letter or spirit of the law. An election for this sole and special purpose was posi-

tively required, to the end that the minds of the electors might not be misdirected or influenced by other issues. The court therefore erred in refusing to give the jury the charges asked for by defendant below.

4. Whatever objection might be made to the positions above taken by the plaintiff in error to the other rulings of the court, it is quite clear that the judge who presided over the trial of the case overstepped his authority in taking the case from the jury, and in giving the charge to the jury on the trial. He not only charged them on the weight of the evidence, which is prohibited (Paschal's Digest, Art. 1464), but he has told the jury to find a verdict in favor of one party. The Supreme Court says, in Reynold v. Williams, 1 Tex., 311: "He (the judge) has no right to tell them (the jury) they must find a verdict for either plaintiff or defendant." But in this case the judge has done this in so many words.

The judge might explain to the jury the reasons upon which his charge is founded, but must not charge the jury upon the weight of the evidence. (Howerton v. Holt, 23 Tex., 60.) The court must not assume the facts. (Rogers v. Broadnax, 24 Tex., 543; Thomas v. Ingram, 20 Tex., 728.) If the jury is to have any independence whatever, they must be allowed to weigh the evidence adduced, be it more or less, stronger or weaker. In a case where the evidence is documentary or written, and is all on one side, the court might so state to the jury. (Reid v. Reid, 11 Tex., 585; Mitchell v. DeWitt, 20 Tex., 294; Bond v. Mallow, 17 Tex., 636.) In this case there is no statement of facts to show what was actually in evidence; but there is to be no presumption in favor of the evidence being all on one side, so as to sustain the charge of the judge. When a charge is so manifestly contrary to the plain meaning of the authority conferred on the judge by law, it is certainly incumbent on the party who wishes to sustain this charge to show that the evidence warranted it. If there is any presumption to be allowed in the matter, it will be against the authority of the judge to overstep the law.

5. The verdict of the jury is contrary to law, in that it gives compound interest. The amount of the coupons sued on is $280, and these coupons are for *interest* on bonds of $1000 each. Compound interest, unless allowed by a special agreement between the parties to that effect, is only allowed against the debtor where he has been guilty of some gross wrong or neglect. (1 Bouvier's Institutes, p. 447; 4 Barbour N. Y. Sup. Court R., p. 649, Ackerman v. Emott; Chitty on Contracts, p. 561.) We know of no rule of law in this State that would warrant the recovery in such a case as this of compound interest; at least until matured into a judgment by a court of competent jurisdiction. The judgment is in any event excessive to the amount of the difference between $280, the amount sued on, and $457, the amount of the verdict. Under the charge given by the court, what discretion was left to the jury as to the question of gross wrong or neglect by defendant below, to warrant them (the jury) to find interest upon interest by way of damages. In general the courts will set their faces against adding interest to the interest, as being hard, oppressive and tending to usury. (1 Bouvier's Inst., p. 447; 1 John Ch. 14; Von Homert v. Porter, 11 Met., 210.) The constitution of this State (§ 16, Art. 1,) guarantees that no citizen of this State shall be deprived of life, liberty, property or privileges, etc., except by due course of the law of the land. By a legal fiction, a corporation is a citizen, (The State v. The S. P. R. R. Co., 24 Tex., pp. 115 and 119,) and although a corporation has no soul, yet to deny a constitutional right and redress of wrong would be shocking to common sense and the sense of justice, and this too in a country where private rights are respected and law and justice administered.

*N. O. Green,* for the defendant in error.

CALDWELL, J.—This suit is founded upon eight coupons for interest, attached to bonds, issued by the city of San Antonio in payment of stock in the San Antonio Railroad Com-

pany.   The case of the City of San Antonio v. Enoch Jones, 28 Tex., 19, is, in all respects, similar to this.   In that case the suit was upon coupons upon bonds, issued at the same time by the same municipal authority, and for stock in the same railroad company.   We may add, that the bonds were issued by virtue of authority conferred by one and the same act of the Legislature, and by one and the same municipal ordinance.   The two suits are identical, differing only in plaintiffs.   If the same parties were before us on the record, we should have no hesitation in affirming the judgment, on the ground that a judgment in favor of a bondholder upon certain municipal bonds, part of a larger issue, against the same city issuing them, is conclusive on a question of the validity of the issue on a suit brought by the same creditor against the same city on other bonds, another part of the same issue, the parties being *identical*, and all objections taken by the city in the second suit having been open to be taken by it in the former one.   (7 Wall, 619.)

Inasmuch, however, as the learned counsel who represents the city insists with great earnestness upon the unconstitutionality of the law under which these bonds were issued, and presents some points (not in the record) not passed upon in the former suit, we will proceed to notice them in the order presented.

It will be borne in mind we have no statement of facts. Pure questions of law, arising upon the pleadings, are before us.

It is assumed as well settled that the Legislature may authorize municipal corporations to subscribe for stock in railroad companies, and to provide for the payment of such subscriptions, in such manner as may be acceptable to the corporation; provided, it be not repugnant to the constitution.

In the case of The City v. Jones, Judge Moore refers to numerous authorities at once controlling and decisive on this point.   We refer to another list.   (Abb. Dig. Law Corps., title, Municipal Corporations, p. 802.)

Conceding that this general power is lodged in the Legisla-

ture, it is still insisted on that the 12th section of the act incorporating the railroad company is invalid, because it comes within the prohibition of § 24, Art. 7, of the constitution. It is the 12th section which authorizes the subscription. Art. 7, § 24, of the constitution, provides that every law * * * shall embrace but one *object*, and that object shall be expressed by its title.

The object of the act incorporating the railroad company, was to build a road, promoting alike the general good and the special interests of the city. The ultimate end or object of the act being the completion of a road, no lawful means or assistance in aid of this object, we apprehend, can be variant from the expressed object in the title.

The grant of power here has for its *object* the building of a road. A grant of power draws with it all necessary lawful means for the due execution of the object of the grant. How, then, can these lawful means (this municipal subscription) in aid of the object, be said to vary from or conflict with the object? We are of opinion that when an act of the Legislature expresses in its *title* the object of the act, the title embraces and expresses any lawful means to achieve the object, thus fulfilling the constitutional injunction, that every law shall embrace but one object, and that shall be expressed in its title.

Cannon v. Hemphill, 7 Tex., 208, is relied on in support of the unconstitutionality of section 12 of the act. The act under review in that case was entitled " an act to regulate proceedings in the District Court." It was sought to make it apply to proceedings in the Supreme Court. The " jurisdiction" of the two courts is different. The object of the act being to regulate proceedings in one jurisdiction, and that jurisdiction expressed in the title, can not, we apprehend, be tortured into an object to regulate proceedings in another and different jurisdiction, not expressed in the title.

The view we have taken of the constitutionality of the 12th section, is fully sustained in Tadlock v. Echols, 20 Texas, 792. So also in Chiles v. Drake, 2 Met., (Ky.) 146. The object of

the act in this latter case was the redress of injuries arising from the neglect or misconduct of railroad companies and others.

It was held that the object in view was to provide a remedy for certain injuries, and the fact that a remedy was furnished for such injuries, against natural as well as artificial persons, does not impart to it the character of a law which embraces various and distinct subjects. Redress of injuries is the object, and none other is embraced in the act, nor does it contain any provision that does not relate to that subject.

Assuming that the constitutionality of the act in all its parts would be upheld, the learned counsel for the city insists that the corporate authorities of the city transcended their delegated powers, in issuing the bonds and coupons without having obtained the assent of the required number of corporate electors in the manner prescribed by section 12 of the act. This, if true, is of no moment to a *bona fide* holder.

It is well settled, indeed it may be regarded as no longer an open question, that bonds on coupons of this character are negotiable paper, transferable on delivery. A *bona fide* holder for a valuable consideration can not be held responsible for the misconduct or default of the parties issuing them. Such *bona fide* holder may well presume that every condition precedent to the issuance of the bonds and coupons, have been complied with. (1 Wall, 203, 385 ; 27 Ill., 474 ; 24 How., 287 ; Abb. Dig., Law Corps., 127, and authorities there collated.)

True, these coupons have not the form and character of negotiable instruments according to the law merchant ; nevertheless, they are regarded as transferable in the same manner and with like effect. (2 Met., Ky., 56 ; 10 Wis., 136.) The *bona fide* holder, discovering nothing to excite suspicion, and coming into possession in due course of trade, may enforce payment, notwithstanding they may not be valid as between the original parties. (Id.   Abb. Dig., Law Corp., 127.) " Where a corporation has power, under any circumstances, to issue negotiable securities, the *bona fide* holder has a right to

presume they were issued under the circumstances which gave the requisite authority, and they are no more liable to be impeached for any infirmity in the hands of such holder than any other commercial paper." (Gelpeke vs. City of Dubuque, 1 Wall, 203.)

If there be fraud, irregularity, or non-compliance with the rules laid down by the authority which sanctions the issue, the corporation may be restrained by injunction from issuing the bonds by any party in interest, (27 Ill., 305; 3 Clark, 311; 1 Wall, 385); but it is too late, after the bonds have fallen into innocent hands, to institute inquiries as to the qualifications of corporate electors, their number, or the day on which the election was held. (24 How., 287; 24 Ill., 75; 1 Wall, 197.)

All that can be required of the *bona fide* holder, is a knowledge of the law authorizing the issue. (33 Mo., 440; 29 Conn., 124; 1 Wall, 385; 25 Ill., 317.)

The case of Henderson v. Railroad Co., 17 Texas, 560, is cited and relied on as controlling and decisive of this. We are unable to trace the analogy.

The object of the suit in Henderson v. Railroad Co., was to cancel certain deeds. The deeds were executed by appellant to Jones, in trust, to be conveyed in fee to appellee, upon the happening of certain conditions precedent, expressed in the deeds. Jones, it was alleged, in fraud of appellant's rights, and without the conditions precedent having happened or being complied with, conveyed the land to the railroad company. This was litigation between original parties. No intervening purchaser, without notice, stood between the contending parties.

The legal propositions we have been discussing are deducible from elementary principles, and are expounded and administered by the most exalted tribunals in the land. They are the doctrines of justice and truth, and may be summed up in the universally admitted maxim, that no man shall be permitted to avail himself of his own wrong. They are as applicable to artificial as to natural persons. The city of San Antonio, with

all her corporate powers and privileges, when a suitor at the bar of public justice, has no immunities not accorded to the humblest citizen who may dwell within her limits.

Numerous authorities are arrayed in support of the doctrine that corporations are restricted to the mode authorized for the execution of a granted power, and are not permitted to extend the grant beyond the letter and spirit of the act of incorporation. This is sound law. It is the general rule, but, obviously, the law has no application to the facts.

The rule of construction contended for as applicable to this case, so far from being strict, would be latitudinarian. It would be an inversion of the strict rule of construction, and confer on corporate bodies privileges injurious to the public, and in derogation of natural justice. If a slight departure from duty on the part of the corporators exercising the functions of the corporation, from the mode authorized to found a credit, would enable a corporation, after having thrown its obligations on the market, to retain the benefit and refuse the payment—to repudiate the whole transaction—how else could such a rule of construction be characterized than as a legalized system, alike destructive to corporate faith and the public morals?

To the objection that the verdict is contrary to law, in that it awards compound interest, we merely reply in the language of the Supreme Court of the United States : " Bonds and coupons like these, by universal commercial usage and consent, have all the qualities of commercial paper. If the plaintiffs recover in this case, they will be entitled to the amount *specified* in the *coupons*, with interest " thereon. (Gelpeke v. Dubuque, 1 Wall, 175.) The case quoted from is in every material point identical with the one before us.

The petition alleges that the plaintiff below came into possession of the coupons as a *bona fide* holder, long before maturity, and for a valuable consideration, without notice. This averment must have escaped the notice of the pleader, else the further exception of a failure to prove a consideration would not have been presented. A contract made by a corpo-

ration is presumed to be on sufficient consideration, until it otherwise appears.   (Abb. Dig., L. C., 210.)

The remaining question relates to the charges given and those refused.    The charges refused were based upon the hypothesis of the unconstitutionality of the law; and secondly, that the city could not be held responsible without proof that the bonds were issued in exact compliance with the mode indicated by the act authorizing the issue.    From the foregoing it will be seen there was no error in refusing them.    The charge given and excepted to was:   "You will find for the plaintiff."

"The judge shall not, in any case, civil or criminal, charge or comment on the weight of evidence."   (Art. 1469, Paschal's Dig.)   In Reynolds v. Williams, 1 Tex., 313, it was held, to charge the jury to "find for the defendant," was wrong.    That this ruling was too rigid, is abundantly attested by the subsequent and repeated decisions of this court: decisions which were concurred in by the eminent and lamented judge who delivered the first.    This opinion has not been overruled in terms, but certainly the severity of the rule has been greatly relaxed.

When there is no evidence competent to support a material issue, it is not error to charge the jury to find for the plaintiff. The rule can not apply unless there be evidence to weigh. (5 Tex., 152.)   If there be any evidence, is a question for the judge.    Its sufficiency rests with the jury.    In 10 Tex., 116, it was held not to be error to charge for the plaintiff, when the jury could come to no other conclusion.    In 17 Tex., 63, Judge Hemphill said:   "We have repeatedly held, that where evidence was all on one side, and sufficient to support the verdict, it is no invasion of the province of the jury for the court to instruct them to find such a verdict.    When the question is purely one of law, the court may instruct the jury what verdict to render, because that verdict is a "mere matter of form." (20 Tex., 299.)

The doctrine here laid down is in harmony with the general current of decisions throughout the Union.    Public and cor-

porate faith is upheld and enforced, individual right is vindi-
cated and sustained.   In one State a different rule prevails.   It
stands out in "unenviable solitude."   If a State court shall
erect an altar, and decree the sacrifice of law and justice, let
not the officiating priests be found in our tribunals.

Judgment affirmed.