73 A.3d 440

IN THE MATTER OF JOHN C. JOHNSON, CAPE MAY COUNTY.

Argued November 28, 2012—Decided September 10, 2013.

368

*James B. Arsenault, Jr.,* Assistant County Counsel, argued the cause for appellant Cape May County (*Barbara L. Bakley-Marino,* County Counsel, attorney).

*Todd A. Wigder,* Deputy Attorney General, argued the cause for respondent Civil Service Commission (*Jeffrey S. Chiesa,* Attorney General of New Jersey, attorney).

*J. Vincent Molitor,* Assistant Prosecutor argued the cause for amicus curiae Cape May County Prosecutor (*Robert L. Taylor,* Prosecutor, attorney).

Judge CUFF (temporarily assigned) delivered the opinion of the Court.

At issue in this appeal is the reclassification of the tasks performed by a prosecutor's agent. The prosecutor's agent title is in the unclassified service. A person appointed to that position performs tasks assigned by the prosecutor and serves at the pleasure of the prosecutor. Responding to complaints about the proliferation of prosecutor's agent appointments in various counties, the Civil Service Commission (Commission) commenced an examination of the job responsibilities of recent appointees. In spite of assurances that it was concerned only with recent appointees, the Commission conducted an audit of the position occupied by John C. Johnson, a long-time prosecutor's agent in Cape May County (Cape May County or County), determining that his job responsibilities did not meet the newly-devised specifications for that position but matched that of the classified position of property clerk. As a result, the Commission provisionally appointed Johnson to that classified position.

Cape May County and the Cape May County Prosecutor contend that the Commission's action is manifestly unjust under the circumstances, which include repeated recognition of the sensitive nature of the position of prosecutor's agent and implicit and explicit assurances that incumbent prosecutor's agents would not be subject to the newly-developed specification for that title. For the reasons set forth herein, we hold that the reclassification that occurred here is manifestly unjust.

I.

The action challenged in this appeal is the reclassification of Johnson's position as prosecutor's agent in the Cape May County Prosecutor's Office. The Cape May County Prosecutor appointed Johnson to the position of prosecutor's agent on September 24,

1984. At the time of his appointment, *N.J.S.A.* 11A:4–4(s) [1] per-mitted the Cape May County Prosecutor to employ two unclassi-fied "agents, investigators, or special officers." Johnson was continuously employed as a prosecutor's agent until April 17, 2009, when he received a letter from the Commission informing him that his position should be in the classified service and that he should carry the title of property clerk. The background to that April 17, 2009 letter is at the center of this appeal.

### A.

Following adoption of the Civil Service Act (the Act), *N.J.S.A.* 11A:1–1 to 11–6, the historical treatment and classification of prosecutor's agents remained unchanged. In 1989, the Merit System Board (the Board) [2] recognized that the title of prosecu-tor's agent should remain in the unclassified service pursuant to *N.J.S.A.* 11A:3–4(*l* ). *In re Cnty. Prosecutor's Agents,* DOP, final decision (May 26, 1989). Additionally, the Board found that "such appointments ... shall not exceed 12 in counties [with a popula-tion of over 300,000]; 6 in counties [with a population between 160,000 and 300,000]; and 2 in other counties." *Id.* at 1–2 (citing *N.J.S.A.* 11A:4–4(s)). Cape May County was permitted two prose-cutor's agent positions.

In 2004, the Board addressed the practice of assigning the title to more than the number authorized in *N.J.S.A.* 11A:4–4(s). *In re Prosecutor's Agents, Gloucester Cnty. Prosecutor's Office,* DOP 2004–532, final decision (July 16, 2004). The Board concluded that the Gloucester County Prosecutor could hire six additional prose-cutor's agents as long as the duties to be performed were not appropriate for a classified, career service position. In doing so, the Board reasoned that a prosecutor must have the ability to

---

[1] Title 11 in its entirety was repealed in 1986 and replaced by Title 11A.

[2] Effective June 30, 2008, the Commission was reconstituted and assumed the duties of the Department of Personnel (DOP) and the Board. *N.J.S.A.* 11A:11–2(b).

incur expenses in the lawful performance of his or her functions and that *N.J.S.A.* 2A:158–7 authorized such appointments. The Board noted, however, that the record did not clearly reveal whether the duties assigned to the prosecutor's agents would impinge upon career service titles but that the assignment of duties, functions, and responsibilities normally discharged by a member of the classified service to a prosecutor's agent raised serious concerns. The Board directed the DOP to review the duties of the newly-appointed conditional hires, who exceeded the number of statutorily-authorized agents in Gloucester County, and others hired by the prosecutor in certain counties other than Cape May in excess of the statutorily-authorized number as of 1989. The Board further recommended that the DOP adopt new numerical limits for prosecutor's agents.

On October 19, 2006, the DOP issued a memorandum to all county prosecutors. The memorandum stated that the DOP would be reviewing the duties performed by incumbent prosecutor's agents to avoid impingement on career service titles. The memorandum included a "title specification" for the position that would apply to appointments made on or after October 19, 2006, and it expressly assured that the newly-adopted specification would not apply to current employees.

The DOP conducted an audit of the Cape May County Prosecutor's Office in 2008. Johnson filled out a questionnaire in which he reported that he spent seventy percent of his work time as the "primary property and evidence custodian." He stated that he possessed, organized, and maintained evidence for the Prosecutor's Office and testified, as required, at evidentiary hearings and trials. He reported that he spent ten percent of his time as a "system manager for the prosecutor's management information system, promis/gavel," ten percent of his time as an "information security representative," and the balance on other tasks assigned by the prosecutor. His supervisor commented that the most important duty performed by Johnson "is that of evidence custodian."

Seven months later, on April 17, 2009, Johnson received the letter from the Division of Local Human Resource Management informing him that he was "appropriately classified in the classified title of Property Clerk" rather than prosecutor's agent.

### B.

The Cape May County Human Resources Department received similar advice on April 12, 2009. The County appealed to the Commission contending that the position should not have been reclassified. It noted that Johnson had been approved for an unclassified appointment in 1984. It argued Johnson was exempt from classification review because he was the first of two agents permitted to be hired by the Prosecutor's Office pursuant to *N.J.S.A.* 11A:4–4(s). It further argued that the 2004 decision of the Board regarding the Gloucester County prosecutor's agents supported its position and that Johnson occupied a position of trust and possessed qualifications and responsibilities beyond that of a property clerk.

The Commission issued a final decision on the appeal on November 19, 2009. The Commission upheld the reclassification, noting that the job specification for prosecutor's agent provided that incumbents should perform "non-law enforcement duties" to assist the prosecutor, including trial preparation, administration, media and community relations, and research and data analysis. It further provided that the job specification for property clerk best met the duties actually performed by Johnson. Finally, the Commission opined that "it is settled that [it] is charged with ensuring that all positions are assigned job titles that are consistent with its duties and responsibilities," that the review was properly initiated, and that Johnson's actual duties aligned with the classified position of property clerk.

Cape May County appealed to the Appellate Division, which affirmed the decision of the Commission in an unpublished opinion. The appellate panel recognized the authority of the Commission to review and reclassify positions, *see N.J.A.C.* 4A:3–3.4, –

3.5(a), and it determined that the Commission properly reclassified the position occupied by Johnson from an unclassified to a classified position. The panel also rejected the contention that equitable estoppel barred reclassification of Johnson's position. The panel observed that the October 19, 2006 memorandum was not intended to induce reliance and that there had been no showing of any actual, detrimental reliance. Furthermore, that memorandum did not relieve the Commission of its statutory responsibility to assess and reclassify Johnson's title. Finally, the panel held that the doctrine of laches did not bar reclassification.

We granted the County's petition for certification. *In re Johnson*, 208 *N.J.* 599, 34 *A.*3d 780 (2011).

## II.

Cape May County argues that it is simply inequitable to reclassify Johnson's position, particularly because the October 19, 2006 memorandum advised that current prosecutor's agents were exempt from a position audit and title reclassification. Johnson was hired in 1984 to an unclassified position before the Legislature decided to place a cap on the number of unclassified agents a prosecutor could hire. Therefore, the County contends it is inequitable to force Johnson to submit to an open, competitive examination to retain the position he has occupied since 1984.

Further, relying on the 2004 Gloucester County decision, the County argues that Johnson should remain exempt from classification review, it was permitted to appoint two persons as prosecutor's agents, and those positions—one of which was held by Johnson since 1984—are exempt from reclassification. The County contends the Appellate Division inappropriately discounted its equitable estoppel claim.

The Cape May County Prosecutor contends that the reclassification is tantamount to demoting Johnson without notice, that the Commission is equitably estopped from changing the classification of the position occupied by Johnson, and that laches bars the reclassification.

The Commission maintains that it properly exercised its authority to examine the functions performed by Johnson and to reclassify him from an unclassified employee to a classified employee. It contends that its action is entitled to deference, that it has the authority to establish, administer, and continuously review the State classification plan applicable to all positions in State and local government, and that it acted consistent with that authority in reclassifying the position to a title that more accurately reflected Johnson's actual duties.

In addition, the Commission contends that its 2004 Gloucester County opinion supports its position and cannot be confined only to "excess" prosecutor's agents. It asserts that the County and the County Prosecutor ignore the critical element of its Gloucester County opinion directing that prosecutor's agents should not perform duties allocated to classified titles. It further argues that the October 2006 memorandum issued by the Commission does not bar it from reclassifying any position that does not fit the actual duties being performed. To that end, the Commission asserts that neither equitable estoppel nor laches bars its reclassification action in this case.

### III.

We commence with a discussion of the purpose of the civil service system and the authority to classify and reclassify positions in the civil service.

The Act established the Commission. The Act implements the constitutional provision requiring a civil service system. *N.J. Const.* art. VII, § 1, ¶ 2. The purpose of the Act is "to ensure efficient public service for state, county, and municipal government." *Commc'ns Workers of Am. v. N.J. Dep't of Pers.*, 154 *N.J.* 121, 126, 711 *A.*2d 890 (1998); *accord Borough of Park Ridge v. Salimone*, 21 *N.J.* 28, 44, 120 *A.*2d 721 (1956); *see also N.J.S.A.* 11A:1–2. The goal of the Act is to permit employees to be appointed and advanced based on their merit and demonstrated abilities. *N.J.S.A.* 11A:1–2(a), (c); *see Commc'ns Workers, supra,*

154 *N.J.* at 126, 711 *A.*2d 890; *Kelly v. Civil Serv. Comm'n,* 37 *N.J.* 450, 456, 181 *A.*2d 745 (1962). Civil Service positions are designed to be "beyond political control, partnership, and personal favoritism." *Commc'ns Workers, supra,* 154 *N.J.* at 126, 711 *A.*2d 890; *accord N.J.S.A.* 11A:1–2(e).

█ In furtherance of its purpose, the Act created the Commission. *N.J.S.A.* 11A:2–1. Among its various responsibilities, the Commission is charged with the assignment of titles among the career service, the senior executive service, and the unclassified service for positions in State service and political subdivisions. *N.J.S.A.* 11A:3–1. The Commission also has broad reclassification powers. The authority to assign and reassign titles includes the duty to "[e]nsure the grouping in a single title of positions with similar qualifications, authority and responsibility." *N.J.S.A.* 11A:3–1; *see also State v. State Supervisory Emps. Ass'n,* 78 *N.J.* 54, 90, 393 *A.*2d 233 (1978) (recognizing authority to classify positions and to prescribe qualifications for specific titles). Additionally, *N.J.S.A.* 11A:3–1(d) provides that the Commission may "reassign titles to appropriate positions." This Court construes the authority granted to the Commission liberally. *Gloucester Cnty. Welfare Bd. v. N.J. Civil Serv. Comm'n,* 93 *N.J.* 384, 390, 461 *A.*2d 575 (1983); *Mastrobattista v. Essex Cnty. Park Comm'n,* 46 *N.J.* 138, 147, 215 *A.*2d 345 (1965).

Administrative regulations further define the Commission's authority. *N.J.A.C.* 4A:3–3.2(b)(2) requires that classification plans list job titles and provide a "job specification for each title, which shall include a descriptive summary of duties and responsibilities of a position or group of positions which are sufficiently similar in content to be assigned a job title." *N.J.A.C.* 4A:3–3.3(a)(1) also sets forth the Commission's power to reclassify existing positions through "job analysis." *N.J.A.C.* 4A:3–3.3(d) states that "[p]ositions in the career, unclassified and senior executive services shall be subject to job audit by the [DOP] to ensure accurate classification and compliance with Title 11A, ... and Title 4A, *N.J.A.C.*"

*N.J.A.C.* 4A:3–3.5(a) states that, "[w]hen the duties and responsibilities of a position change to the extent that they are no longer similar to the duties and responsibilities set forth in the specification and the title is no longer appropriate, the Commissioner shall after review" reclassify the position to a more appropriate title, establish a new title, or take other appropriate action. Moreover, "[n]o person shall be appointed or employed under a title not appropriate to the duties performed," *N.J.A.C.* 4A:3–3.4, and a classification review may be initiated by either the DOP or the appropriate appointing authority, *N.J.A.C.* 4A:3–3.5(b).

 Courts provide the widest possible interpretation of the Act as it was designed to procure efficient public service and to maintain stability and continuity in ordinary public employment. *State Dep't of Civil Serv. v. Clark,* 15 *N.J.* 334, 341, 104 *A.2d* 685 (1954); *Aparin v. Cnty. of Gloucester,* 345 *N.J.Super.* 41, 45, 783 *A.2d* 271 (Law Div.2000), *aff'd o.b.,* 345 *N.J.Super.* 24, 783 *A.2d* 260 (App.Div.2001). When the Commission exercises its authority to prescribe the qualifications for a position, courts are loathe to interfere. *Gloucester Cnty. Welfare Bd., supra,* 93 *N.J.* at 393, 461 *A.2d* 575. In examining determinations made by the Commission, courts will not interfere with reclassification decisions in the absence of "an affirmative showing of arbitrariness." *Mullin v. Ringle,* 27 *N.J.* 250, 256, 142 *A.2d* 216 (1959); *accord Carls v. Civil Serv. Comm'n,* 17 *N.J.* 215, 221, 111 *A.2d* 45 (1955). For that deference to attach to a reclassification decision, however, the record must demonstrate a thorough understanding of the duties of the position or consultation with relevant employees with extensive experience in the field. *See Gloucester Cnty. Welfare Bd., supra,* 93 *N.J.* at 394–95, 461 *A.2d* 575.

## IV.

The County and the County Prosecutor acknowledge the broad reclassification authority of the Commission and focus their arguments on equitable estoppel in the reclassification affecting Johnson's position. Specifically, they argue that the Commission

should be equitably estopped from auditing Johnson's position, applying a title specification adopted in 2006, and reclassifying his position. They highlight the October 2006 memorandum to prosecutors that stated the newly-devised title specification would not apply to incumbents. The Commission responds that the audit and reclassification was entirely consistent with governing law and the 2004 order issued by the Board. Mindful of those arguments, we address the applicability of equitable estoppel in a setting such as the one presented in this matter.

This Court addressed the application of equitable estoppel against the Commission in *O'Malley v. Department of Energy*, 109 *N.J.* 309, 537 *A.*2d 647 (1987). There, an employee occupying the position of senior engineer was appointed to a supervisory position in the classified service on a provisional basis. *Id.* at 311, 537 *A.*2d 647. When appointed provisionally to a position, the employee may occupy the position until a list following a competitive examination is obtained from which the appointing authority may select a person to occupy the position on a permanent basis. *Id.* at 313–14, 537 *A.*2d 647. The provisional employee may be appointed to the position if included on the eligible list. *See id.* at 313, 537 *A.*2d 647. In *O'Malley*, the Commission never scheduled a competitive examination for the position occupied by the employee on a provisional basis and, three years later, the employee was returned to his permanent position. *Id.* at 311, 537 *A.*2d 647.

The employee argued he was entitled to retain the provisional appointment because he had satisfactorily performed the responsibilities of that position and the Commission failed to discharge its responsibility to schedule an examination. *Id.* at 311–12, 537 *A.*2d 647. Therefore, the employee contended the Commission should be estopped from returning him to his permanent position. *Ibid.* Responding to that argument, this Court outlined the elements of the remedy of equitable estoppel and its general inapplicability to governmental entities; we stated:

> Equitable estoppel is rarely invoked against a governmental entity, *Cipriano v. Department of Civil Serv.*, 151 *N.J.Super.* 86, 91 [376 *A.*2d 571] (App.Div.1977), particularly when estoppel would "interfere with essential governmental functions."

*Vogt v. Borough of Belmar,* 14 *N.J.* 195, 205 [101 *A.2d* 849] (1954). Nonetheless, equitable considerations are relevant to assessing governmental conduct, *Skulski v. Nolan,* 68 *N.J.* 179, 198 [343 *A.2d* 721] (1975), and may be invoked to prevent manifest injustice, *Vogt v. Borough of Belmar, supra,* 14 *N.J.* at 205 [101 *A.2d* 849].

. . . .

The essential elements of equitable estoppel are a knowing and intentional misrepresentation by the party sought to be estopped under circumstances in which the misrepresentation would probably induce reliance, and reliance by the party seeking estoppel to his or her detriment. *Horsemen's Benevolent & Protective Ass'n v. Atlantic City Racing Ass'n,* 98 *N.J.* 445 [487 *A.2d* 707] (1985) (quoting *Carlsen v. Masters, Mates & Pilots Pension Plan Trust,* 80 *N.J.* 334, 339 [403 *A.2d* 880] (1979)); *Miller v. Miller,* 97 *N.J.* 154, 163 [478 *A.2d* 351] (1984).

[*Id.* at 316–17, 537 *A.2d* 647.]

Applying those principles to the displaced provisional employee, this Court determined that his estoppel claim failed, *id.* at 317, 537 *A.2d* 647, because "the legislative goal of appointments based on merit and fitness is the paramount consideration," *id.* at 316, 537 *A.2d* 647. This Court concluded the legislative goal overrode the individual interests of the employee. *See id.* at 316–18, 537 *A.2d* 647.

Moreover, the employee was familiar with the civil service system and the temporary and conditional nature of provisional appointments. *Id.* at 317–18, 537 *A.2d* 647. Furthermore, this Court recognized the critical distinction between a legislative directive and a representation on which an employee may rely. *Id.* at 318, 537 *A.2d* 647. Finally, the record was bereft of any suggestion that the employee relied to his detriment on any representations of the Commission. *Ibid.* Therefore, the employee had no right to retain his provisional position. *Ibid.*

In *Horsemen's Ass'n, supra,* this Court also declined to apply equitable estoppel when a racetrack failed to pay the full sum directed by statute to a designated horsemen's association to enhance purses to owners of winning horses. 98 *N.J.* at 451, 455–58, 487 *A.2d* 707. There, this Court emphasized that "essential to a finding of estoppel is a misrepresentation of material fact by one party and an unawareness of the true facts by the party seeking an estoppel." *Id.* at 456, 487 *A.2d* 707. Equitable estoppel is designed to prevent disavowal of prior conduct if a change of

course would be unjust. *Carlsen, supra,* 80 *N.J.* at 339, 403 *A.*2d 880. Under prior versions of the statute requiring payment of a percentage of the amount bet on races to designated groups, the racetrack had paid the statutory maximum. *Horsemen's Ass'n, supra,* 98 *N.J.* at 456, 487 *A.*2d 707. This Court concluded that the horsemen's association could not expect to be paid the increased percentage because the racetrack "never represented that it would continue to pay the statutory maximum," and both parties knew the statute did not require payment of the maximum amount. *Ibid.*

In *Carlsen, supra,* a union and pension trust both failed to fully apprise the plaintiff of his pension rights. 80 *N.J.* at 341, 403 *A.*2d 880. Based on a combination of silence and omission of all relevant and material facts, which deprived the plaintiff of a clear and accurate understanding of his right to a pension, and the plaintiff's reliance on the incomplete information given to him, the union and the pension trust were estopped from adopting a position that barred his claim for a pension. *Id.* at 341–42, 403 *A.*2d 880.

## V.

Our ordinary deference to the expertise and discretion of an administrative agency, such as the Commission, does not extend to a reclassification decision that does not demonstrate a thorough understanding of the duties of the incumbent or consultation with relevant employers. *See Gloucester Cnty. Welfare Bd., supra,* 93 *N.J.* at 394–95, 461 *A.*2d 575. This Court also need not defer to an administrative decision that expressly contradicts prior assurances provided to prosecutors and their incumbent prosecutor's agents. *See Cnty. of Morris v. Fauver,* 153 *N.J.* 80, 88, 104, 707 *A.*2d 958 (1998) (rejecting State contention that county equitably estopped from pursuing breach of contract claim for nonpayment of costs to house State prisoners in county correctional facility).

The prosecutor in each county has been granted the authority to appoint a limited number of individuals to the unclassified position of prosecutor's agent to perform those duties assigned directly by the prosecutor. The Commission does not dispute that Johnson was appointed as a prosecutor's agent in Cape May County in April 1984 and remained employed in that position until its 2009 action. It is considered a sensitive position because of the broad range of tasks that have been and may be assigned to the individual in that position. As a prosecutor's agent, Johnson assisted in the preparation of cases for trial, gathered information and other data requested by the prosecutor, testified in grand jury and trial proceedings, researched and verified information as requested by the prosecutor, provided guidance to or training of new agents, detectives, and assistant prosecutors, prepared and reviewed official correspondence, and maintained essential records and files, utilizing various types of electronic and manual recording and information systems.

Since 1984, Johnson became an expert in the management of evidence and property in the possession of the prosecutor. He also gained expertise in researching criminal histories. Due to his expertise and competence, he trained personnel throughout the County in evidence and property management and trained detectives, other prosecutor's agents, and assistant prosecutors to use the federal criminal history database to research criminal histories. He also performed other duties as assigned by the prosecutor.

The Commission considers the position of prosecutor's agent as unclassified and, since 2006, has viewed the position as "perform[ing] non-law enforcement duties to assist the Prosecutor in one or more of the following areas: trial preparation; administration; media/community relations; research and data analysis; [and] other related duties as required." By contrast, the Commission considers the position of property clerk as a classified position and defines the position as follows:

Under direction, is responsible for the collection, recording, and safe storage of property and other valuables, consigned or confiscated by the police department or other law enforcement agency; does other related duties as required.

The County and the Prosecutor concede that the description and the accompanying examples of work encompassed by the property clerk position include some of the tasks performed by Johnson, but they note it ignores a significant portion of his day-to-day responsibilities. Accordingly, both insist that the analysis of Johnson's job duties is so flawed that it does not warrant the presumption of validity normally afforded such decisions. We agree.

The Commission does not contest that Johnson may perform other duties but seeks to minimize the scope and number of those duties. Considered as a whole, however, Johnson performs many functions beyond simply cataloging and organizing for safe-keeping property and valuables consigned or confiscated by a law enforcement agency. Rather, Johnson is an integral part of the prosecutorial team, assuring not only the preservation of evidence but also the maintenance of the chain of custody of physical evidence. He trains members of other law enforcement agencies in proper management of evidence. Most importantly, Johnson is available to perform any number of critical tasks required by the prosecutor, as needed and at the prosecutor's discretion.

The decision rendered by the Commission is also more than a reclassification decision. Reclassification decisions normally review whether the tasks actually performed by a person occupying a certain position match the tasks designated for that position by the Commission. *N.J.A.C.* 4A:3–3.5. In some instances, the review examines whether the tasks actually performed by an incumbent should be performed by someone in the classified service. *See N.J.A.C.* 4A:3–3. Ostensibly that is what occurred here. However, by relegating Johnson to the classified service, the Commission *effectively removed Johnson from the position of confidential aide to the prosecutor*, eliminated one of the prosecutor's agent positions, and barred the prosecutor from assigning any tasks to

Johnson that are considered "out-of-title." *See N.J.A.C.* 4A:3–3.4 (prohibiting assignment of out-of-title work).

We acknowledge that an employer that participates in the civil service system may not assign tasks that are assigned to a classified employee to an unclassified employee. On the other hand, the Commission must acknowledge the sensitive nature of the prosecutor's duties and the need to utilize his or her unclassified employees to meet the investigational and prosecutorial needs of the position.

The Legislature has declared that "[t]he criminal business of the State shall be prosecuted by the Attorney General and the county prosecutors." *N.J.S.A.* 2A:158–4. Each prosecutor is also obligated to "use all reasonable and lawful diligence for the detection, arrest, indictment and conviction of offenders against the laws." *N.J.S.A.* 2A:158–5. To that end, a prosecutor is authorized to incur expenses to meet the responsibilities of the office, *N.J.S.A.* 2A:158–7, and may seek authorization to expend funds beyond the sum appropriated by the Legislature. *In re Prosecutor of Middlesex Cnty.*, 255 *N.J.Super.* 333, 338–39, 605 *A.*2d 265 (App.Div.1992). A prosecutor also has broad authority to appoint members of his or her staff to various positions in the office. *N.J.S.A.* 2A:158–15, –18.1; *Cetrulo v. Byrne*, 31 *N.J.* 320, 328, 157 *A.*2d 297 (1960). One of those positions is that of prosecutor's agent. Notably, the DOP acknowledged in 1989 that the prosecutor's agent position should be preserved and should remain in the unclassified service, even though the Legislature omitted a specific reference to the position when it adopted Title 11A. Further, in 2004, the DOP acknowledged that a prosecutor may appoint prosecutor's agents in excess of the prior statutory limits.

In light of the sensitive nature of the position, when the Commission undertakes an audit of a position in the course of a classification or reclassification review, it must also account for all, not just some, of the tasks assigned to an employee. When it

picks and chooses some of the tasks performed by the employee but ignores or mischaracterizes others, the decision takes on attributes of an arbitrary and unreasonable action.

In this matter, the arbitrariness and unreasonableness of the Commission's action, as it applies to Johnson, is made more troubling by the historical treatment of prosecutor's agents by the Commission since at least 1989. Title 11A did not provide for the position of prosecutor's agent much less provide that the position would be unclassified. In a final order dated May 26, 1989, however, the DOP ordered that that the title of prosecutor's agent would remain in the unclassified service. *In re Cnty. Prosecutor's Agents, supra,* at 2. It also ordered that Cape May County would be limited to two prosecutor's agents in the unclassified service. *See id.* at 1–2. Johnson is one of the two original prosecutor's agents of Cape May County. In rendering that decision, the order noted the "sensitive nature of the Prosecutor's Office and the longstanding use of Prosecutor's Agents." *Id.* at 1. That status counseled continuation of the position in the unclassified service. *Ibid.*

Then, in 2004, a union representing certain classified employees in another county challenged an order by an assignment judge permitting a county prosecutor to appoint additional prosecutor's agents beyond the limit established by statute and the 1989 Board order. *In re Prosecutor's Agents, Gloucester Cnty., supra,* at 1–2. The duties of one of the four new prosecutor's agents were described to include the "responsibility for inventorying evidence for all criminal matters prosecuted in Superior Court." *Id.* at 4. The Board rejected the contention that a county prosecutor could not hire personnel in excess of statutory limits and confirmed the authority of an assignment judge to authorize those appointments to enable the prosecutor to discharge his duties to detect, arrest, indict, and convict offenders. *Id.* at 6. The agency recognized, however, that the duties assigned to the newly-hired personnel may have an impact on career service employees. *Id.* at 7. Because the record did not permit the agency to determine

whether the tasks to be performed by the newly-appointed personnel should be allocated to career service titles, the agency permitted the conditional appointment of the prosecutor's agents in excess of the limits established by the DOP. *Id.* at 5, 8. The agency also ordered a review of the duties being performed by all prosecutor's agents in prosecutor offices who had been hired in excess of the limitations prescribed in the 1989 order. *Id.* at 8. The prosecutors' offices in Atlantic, Morris, Warren, and Camden counties fell into that category. *Ibid.*

Notably, the terms of the 2004 order did not apply to Cape May County. When the Commission ordered a review of the job responsibilities of prosecutor's agents hired in excess of the limitations set forth in its 1989 order, Johnson had been employed as a prosecutor's agent since 1984 and had been primarily responsible for the management of evidence and property seized or confiscated by the prosecutor since his appointment. Johnson is one of the two persons appointed prosecutor's agent in Cape May County consistent with the statutory limitation at that time. *See N.J.S.A.* 11A:4–4(s). Moreover, the only prosecutors' offices selected for review were Atlantic, Camden, Morris, and Warren counties, and only those prosecutor's agents appointed after 1989.

Finally, on October 19, 2006, the DOP notified prosecutors that it intended "to review the duties being performed by incumbents in order to avoid any impingement upon career service titles." It informed the prosecutors that it had developed a title specification for prosecutor's agents and provided it for their review. The memorandum also informed the prosecutors that "[t]his specification is currently in effect and *will not affect current employees;* however, it will apply to any appointments made on or after [October 19, 2006]." (Emphasis added).

 Contrary to the express terms of that notice, Johnson and the County Prosecutor were informed on April 17, 2009, that a classification audit had been performed and that Johnson should be "appropriately classified in the classified title of Property Clerk." This Court, like the County and the County Prosecutor,

acknowledges that positions that are properly in the classified service should be occupied by civil service personnel rather than unclassified personnel. Here, however, the 2004 order signaled to all non-affected county prosecutors that they need not be concerned about an audit and possible reclassification of positions occupied by long-standing, confidential employees. Two years later, the DOP informed all prosecutors that the newly-developed title specification for prosecutor's agents would be applied only to new appointments to the position and would have no effect on current employees. By any measure, Johnson was a current employee, and neither he nor the Cape May County Prosecutor's Office should have been affected by the 2009 audit. The Commission cannot use its authority to avoid the representation it made to prosecutors and incumbent prosecutor's agents appointed before October 19, 2006.

In conclusion, equitable estoppel is rarely invoked against the government. *O'Malley, supra,* 109 *N.J.* at 316, 537 *A.*2d 647. Nevertheless, equitable considerations are relevant to assessing governmental conduct. *Skulski, supra,* 68 *N.J.* at 198, 343 *A.*2d 721. When an agency misrepresents the effect of a determination under circumstances calculated to induce reliance by reasonable persons to their detriment, the agency may be estopped to prevent a manifest injustice. *Horsemen's Ass'n, supra,* 98 *N.J.* at 456, 487 *A.*2d 707. Consideration of whether equitable estoppel should be applied against an agency is a fact-sensitive inquiry.

In this case, two communications, one a final order of the Board and the other a notice from the DOP to all prosecutors, represented that incumbent prosecutor's agents appointed before 1989 could continue to occupy the unclassified position of prosecutor's agent. Moreover, they could continue to perform whatever duties had been assigned by the prosecutor. They were not subject to the newly-developed title specification and would not be subject to an audit. That final representation affected not only the person occupying the title of prosecutor's agent but also the prosecutor,

both of whom reasonably could have assumed that they could rely on the 2006 communication. The prosecutor could rest assured that Johnson would continue to manage the evidence and property in the competent manner he and his predecessors had learned to expect. Johnson could rest assured that he could occupy the position he had mastered. Both reasonably relied on the assurance of the 2006 communication.

Paired with an audit that failed to distinguish the difference between the management of property seized or confiscated and the maintenance of essential records and files and that failed to acknowledge Johnson's participation in the training of other prosecutor's agents, assistant prosecutors, and other law enforcement personnel, and with the evasion of an explicit representation that the newly-developed specification for the position of prosecutor's agents did not apply to those appointed before October 19, 2006, we are compelled to conclude that reclassification of Johnson's position to the classified service was an arbitrary and capricious agency action that was manifestly unjust under these unusual circumstances. The audit that the Commission had represented would not affect incumbent individuals such as Johnson occurred after he had performed faithfully for twenty-five years the duties assigned to him by the prosecutor.

We hold that Johnson is entitled to restoration to his prior position of prosecutor's agent.

## VI.

The judgment of the Appellate Division is reversed, and the matter is remanded to the Commission for administrative action consistent with the holding of this opinion.

*For reversal and remandment*—Chief Justice RABNER and Justices LaVECCHIA, ALBIN, HOENS, PATTERSON, and Judges RODRÍGUEZ (temporarily assigned) and CUFF (temporarily assigned)—7.

*Opposed*—None.