NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5150-16T1

IN THE MATTER OF CHANGES
IN THE STATE CLASSIFICATION
PLAN, COMMUNICATIONS
OPERATOR, DEPARTMENT OF
CORRECTIONS.[1]

_____

APPROVED FOR PUBLICATION

July 12, 2019

APPELLATE DIVISION

Submitted May 15, 2019 – Decided July 12, 2019

Before Judges Alvarez, Nugent and Reisner.

On appeal from the New Jersey Civil Service Commission, Docket No. 2017-3900.

Oxfeld Cohen, PC, attorneys for appellant IFPTE Local 195 (Arnold Shep Cohen, of counsel and on the briefs; Jesse Humphries, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent Civil Service Commission (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Pamela N. Ullman, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

REISNER, J.A.D.

---

[1] We have corrected typographical errors in the agency's caption.

This case presents the issue whether the Chairperson of the Civil Service Commission (Chairperson) is authorized to approve the creation of a new job title. We conclude that the Chairperson has that authority and did not act arbitrarily in approving the title at issue here.

The appeal had its genesis when the Department of Corrections (DOC) submitted a request to the Civil Service Commission (Commission) for the creation of a new title, "Communications Operator, Department of Corrections." The new title would allow corrections officers instead of civilian employees to staff the center control units at the State's prisons. In his February 23, 2015 letter to the Chairperson setting forth the request, the Corrections Commissioner asserted that the new title was required to ensure the prisons' continued security. The Chairperson referred the request to the Commission's Agency Services Division (Agency Services) for review.[2] Agency Services "evaluated the DOC's request and developed a proposed job specification" for the title. On December 17, 2015, Agency Services transmitted the proposal to the Commission for

_____

[2] By statute, the Chairperson is the agency's chief executive officer and administrator. N.J.S.A. 11A:2-3. According to the agency's regulations, the Commission "consists of" the Chairperson, the Civil Service Commission, and "[s]uch subdivisions as the Chairperson may deem necessary." N.J.A.C. 4A:1-3.1. There is no separate regulation creating the Division of Agency Services.

placement on its agenda. However, the Commission was unable to act on the item, for lack of a quorum, after one of the three commissioners recused herself.[3]

About eighteen months later, when the Commission was still unable to act, the DOC Commissioner sent a June 15, 2017 request to the Chairperson for interim relief. A follow-up request from the DOC noted that "[t]he staffing levels of Communications Operators have dropped to the point of potentially compromising safety and security at all correctional facilities," and creation of the new title would permit the DOC to address the staffing problem. Relying on N.J.A.C. 4A:1-3.2(b)(3), which authorizes the Chairperson to grant interim relief in pending appeals "[b]etween meetings of the Commission," the Chairperson issued a decision granting interim relief on June 23, 2017. The interim decision found that the change was necessary for the safety of the prisons and noted that Agency Services had previously notified IFPTE Local 195 (the

---

[3] The Commission, as a voting body, is statutorily composed of five members, appointed by the Governor with the advice and consent of the Senate, but it can act with a quorum of three members. N.J.S.A. 11A:2-3. For years, the Commission lacked sufficient members to constitute a quorum, leading to its inability to decide contested cases. See In re Corbo, __ N.J. __, __ n.2 (2019) (slip op. at 7, n.2); In re Hendrickson, 235 N.J. 145, 149 (2018). It still has only three appointed members, leaving the Commission one recusal away from an inability to act. The lack of a full complement of commissioners is a matter of public interest, but one appropriately addressed by the Governor and the Legislature. N.J.S.A. 11A:2-3.

union) of the proposed new title, pursuant to N.J.A.C. 4A:3-3.3(a)(4) (requiring notification to appointing authorities and "other affected persons").

The union, which represents the affected DOC employees, filed an appeal from the June 23, 2017 decision. However, on September 1, 2017, the Chairperson reconsidered the issue of interim relief, and concluded no such relief was required because under Commission regulations amended in 2014, the Chairperson was authorized to approve creation of the new title. He, therefore, issued a final decision approving the new title.

After the union filed its merits brief addressing both the June and September decisions, the Commission filed a motion with this court to dismiss the appeal, because the June decision was interlocutory, the union did not amend its notice of appeal to include the September decision, and the June decision was moot. We denied the motion and directed the Commission to brief the merits of the appeal.

Having reviewed the parties' merits briefs, we decline to address the Chairperson's authority to issue interim relief, for two reasons. First, the issue is moot because, on September 1, 2017, the Chairperson issued a final decision approving the requested new title. That decision superseded the earlier decision granting interim relief. Second, as further discussed below, the Chairperson's

underlying action – the approval of a new title – is specifically authorized by the Commission's regulations. Hence, this case does not implicate the union's concern that in granting interim relief, the Chairperson may overstep the bounds of his or her authority, in response to the Commission's inability to act due to lack of a quorum.

Next, we address the September 1, 2017 final decision. In challenging the September 1 decision, the union contends that the decision to approve the title was arbitrary and based on a one-sided process that excluded the union's participation. The union also argues that the Chairperson lacked authority to approve creation of the new title.

After reviewing the record, we conclude that the decision was not arbitrary and is supported by substantial credible evidence of an operational need for the new title. See In re Johnson, 215 N.J. 366, 377 (2013); Karins v. City of Atl. City, 152 N.J. 532, 540 (1998). The Chairperson's findings were explained at length in the interim and final decisions, and no further discussion is warranted here. R. 2:11-3(e)(1)(D), (E). We also conclude that the union had notice and an opportunity to submit its views before the title was finally approved. On August 2, 2017, in response to a motion for reconsideration of the June interim decision, the Chairperson gave the union a further opportunity to submit "any

5

additional argument and/or documentation." At that point, the union was aware of the rationale for creating the new title, because the reasons were detailed in the June interim decision. However, instead of submitting evidence supporting its apparent view that the new title was not needed, the union's August 7, 2017 response simply reiterated that the union was deprived of an earlier opportunity to address the merits of creating the title, and argued that the Chairperson lacked authority to grant interim relief in this situation. Accordingly, we find no merit in the union's argument that it was deprived of the opportunity for input on the decision to create the new title.

We next address the issue of the Chairperson's authority to approve new titles. In rendering the final decision, the Chairperson reasoned as follows:

> In accordance with N.J.S.A. 11A:2-6(d), the Commission, in June 2014, amended its regulations delegating to the Chairperson or designee unambiguous responsibilities regarding the administration of the State Classification Plan. Accordingly, N.J.A.C. 4A:3-3.3(a)(2) specifically requires the "Chairperson or designee" to implement and administer the State Classification Plan by establishing new titles.

The Chairperson reasoned that when Agency Services, as the Chairperson's designee, evaluated the DOC's request, determined "there [was] a need for a new title" pursuant to N.J.A.C. 4A:3-3.6(b), and developed job specifications for the

6

new title, N.J.A.C. 4A:3-3.6(c), it was then appropriate for the Chairperson to exercise his authority under N.J.A.C. 4A:3-3.3(a)(2) by approving the new title.

While we review legal issues de novo, we generally defer to an agency's reasonable interpretation of its own regulations. See In re Freshwater Wetlands Prot. Act Rules, 180 N.J. 478, 488-89 (2004). We find nothing unreasonable in the Chairperson's interpretation of the agency's regulations, which unambiguously authorize the Chairperson to approve new titles. As noted in the final decision, the Commission's regulations delegate to "[t]he Chairperson or designee" the authority to "implement and administer the classification plans." N.J.A.C. 4A:3-3.3(a). That authority specifically includes the power to "[e]stablish new titles." N.J.A.C. 4A:3-3.3(a)(2). We also note that N.J.A.C. 4A:3-3.5(a) gives "the Chairperson or designee" authority to reclassify a position to a more appropriate title and, in that context, to "[e]stablish a new title." N.J.A.C. 4A:3-3.5(a)(2).

The union argues that N.J.A.C. 4A:3-3.6 should be construed as requiring a vote of the Commissioners to approve a new title. We disagree. The union relies on N.J.A.C. 4A:3-3.6(a), which states that "[t]he Civil Service Commission may determine that a new title, title series, or job band is necessary." However, viewing the wording and organizational structure of

section 3.6 as a whole, we conclude the term "Civil Service Commission" refers to the agency rather than the Commissioners acting as a voting body.

The succeeding subsections of 3.6 describe the process by which an appointing authority may apply "to an appropriate representative of the Civil Service Commission" for approval of a new title. N.J.A.C. 4A:3-3.6(b). The following subsections then describe the process by which the "appropriate Commission representative" will consider and approve a new title. N.J.A.C. 4A:3-3.6 (c), (d), and (f). Notably, subsection (f) addresses "[t]he effective date of the creation of a new title by the appropriate Commission representative." N.J.A.C. 4A:3-3.6(f). There is no subsequent subsection requiring approval by the Commission as a voting body.

We find nothing unreasonable in the Chairperson's explanation of the interface between sections 3.6 and 3.3, whereby the Commission's "appropriate representative" – its Agency Services Division – vets an appointing authority's request for a new title under section 3.6, creates a new job description and sets an effective date, and the Chairperson then approves the recommendation under section 3.3. There is no reason to depart from our usual deference to the agency's construction of its own regulations. See Freshwater Wetlands, 180 N.J. at 488-89. The union's additional arguments concerning the interpretation of the

A-5150-16T1

agency's regulations are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Without citing to case law, the union contends that the Civil Service Act, N.J.S.A. 11A:2-11, requires the Commission to create new titles and does not permit delegation of that authority. We ordinarily defer to an agency's reasonable interpretation of its enabling statute. See Hargrove v. Sleepy's, LLC, 220 N.J. 289, 301-02 (2015). And, with respect to the Civil Service Act, our courts "provide the widest possible interpretation of the Act as it was designed to procure efficient public service and to maintain stability and continuity in ordinary public employment." Johnson, 215 N.J. at 377.

N.J.S.A. 11A:2-11 sets forth, in omnibus fashion, a listing of the agency's statutory powers and responsibilities. The section does not state that the Commissioners, acting as a voting body, must carry out each one of the agency's myriad responsibilities. As we have recognized in another context, such an interpretation would be woefully impractical and lead to absurd results. See R.H. Macy & Co. v. Dir., Div. of Taxation, 77 N.J. Super. 155, 177 (App. Div. 1962), aff'd o.b., 41 N.J. 3 (1963) (recognizing that the Director of the Division of Taxation could not be expected to personally carry out all of the agency's legislatively-required functions, without delegating to subordinates). "[A]n

agency may impliedly delegate administrative authority, if it is consistent with the legislative purpose." Santaniello v. N.J. Dep't of Health & Senior Servs., 416 N.J. Super. 445, 454 (App. Div. 2010) (citing R.H. Macy & Co., 77 N.J. Super. at 177). This case certainly illustrates the Commission's need to delegate authority to the Chairperson, thus fostering "efficient public service" and maintaining "stability and continuity" for the agencies whose employment policies the Commission regulates. Johnson, 215 N.J. at 377. We do not construe N.J.S.A. 11A:2-11 as denying the authority to delegate.

The union particularly relies on N.J.S.A. 11A:2-11(h). However, by its terms, this section refers to the Commission's authority to "render the final administrative decision" on "grievances" involving classification, salary, layoff rights and other issues. This case concerns an application to create a new title. It does not concern the filing of a grievance.

Although the union does not cite this section, N.J.S.A. 11A:3-1 gives "[t]he [C]ommission" authority to "assign and reassign titles among the career service, senior executive service and unclassified service." To carry out that responsibility, this section authorizes the Commission to "[e]stablish, consolidate and abolish titles," among many other duties. Ibid. This case does not involve moving a title from the classified to the unclassified service, but

rather involves creating a new title within the classified service. See N.J.S.A. 11A:3-6 (requiring a public hearing before "moving a title from the career service to the unclassified service"). However, without deciding whether moving a title from classified to unclassified is a function the Commission can delegate, we note the list of assorted other technical responsibilities in this section suggests that the Legislature did not intend the Commission voting as a body to carry out each of those subsidiary tasks. See R.H. Macy & Co., 77 N.J. Super. at 177.

While not directly on point, we note that in 1972, we held that the Commission had no authority to sub-delegate some of its powers to appointing authorities, i.e., the agencies whose employment activities the Commission regulates. See Mercer Council No. 4, N.J. Civil Serv. Ass'n v. Alloway, 119 N.J. Super. 94, 99-100 (App. Div.), aff'd o.b., 61 N.J. 516 (1972). However, in 1986, the Legislature amended the Civil Service Act to permit such delegation, under the supervision of the Commission. N.J.S.A. 11A:2-12 (authorizing the Commission to delegate to "an appointing authority" the power to classify positions and other "technical personnel functions," subject to the Commission's supervision); L. 1986, c. 112, § 11A:2-12. If the Legislature was willing to authorize sub-delegation to entities outside the Commission, it logically follows

that the Legislature would permit the Commission to delegate authority within the agency.

Additionally, as the Commission's brief points out, the Legislature has reorganized the agency several times over the years. For example, in 1972, it was known as the Department of Civil Service. N.J.S.A. 11:1-1 (repealed 1986). In 1986, the Legislature created a two-part agency consisting of a Merit System Board and a Department of Personnel. See L. 1986, c. 112. In 2008, the Legislature created one unified agency called the Civil Service Commission. L. 2008, c. 29; N.J.S.A. 11A:2-1; N.J.S.A. 11A:11-1, -2. However, as the agency points out, historically, the responsibility for approving new titles and supervising other technical personnel functions has been vested in the agency's chief executive officer.[4]

At one time, that officer was titled the Chief Examiner and Secretary. See N.J.S.A. 11:7-1 (pre-1986); Alloway, 119 N.J. Super. at 97-98 (describing the responsibilities of the Chief Examiner and Secretary). Later, the chief executive

---

[4]  Nothing in the 2008 statute suggests a legislative intent to limit the Commission's authority to delegate functions to the Chairperson. To the contrary, N.J.S.A. 11A:11-2(h) gives the Commission broad authority to adopt regulations reorganizing the agency into various units to handle "classification, compensation," and other functions, "as the [C]ommission determines are necessary" for its efficient operation. See N.J.S.A. 11A:2-6(d).

officer held the titles of Commissioner of Personnel and Chairperson of the Merit System Board. N.J.S.A. 11A:2-3 (1986). Currently, the Chairperson of the Commission is also the agency's chief executive officer and administrator. N.J.S.A. 11A:2-3.[5] The Commission's current regulations, delegating authority to the Chairperson, are consistent with historical practice.

In summary, we conclude that the Chairperson of the Civil Service Commission was authorized to approve the creation of the new job title at issue here, and his decision to approve the title was not arbitrary or capricious. Accordingly, we affirm the Chairperson's September 1, 2017 final decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[5] By statute, the Governor is authorized to designate one of the Commission members as the Chairperson, who serves in that role at the pleasure of the Governor. N.J.S.A. 11A:2-3. However, the Chairperson's appointment as a Commission member requires the advice and consent of the Senate. Ibid.