**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0352-23

IN THE MATTER OF
FABIO COLOGNA.

_____

Argued January 23, 2025 – Decided February 13, 2025

Before Judges Mawla and Walcott-Henderson.

On appeal from the New Jersey Civil Service Commission, Docket No. 2023-1728.

Catherine M. Elston argued the cause for appellant Fabio Cologna (C. Elston & Associates, LLC, attorneys; Catherine M. Elston, of counsel and on the briefs).

Robert K. Devaney argued the cause for respondent Corporation Counsel (Florio Perrucci Steinhardt Cappelli & Tipton, LLC, attorneys; Robert K. Devaney, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent New Jersey Civil Service Commission (Bernadette Dronson, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Petitioner Fabio Cologna, a firefighter in the City of Hoboken (City), appeals from an August 23, 2023 final administrative action by the Civil Service Commission (CSC), denying his promotion to fire captain. He argues he was improperly bypassed for promotion to fire captain because he was first on the certification list as of December 28, 2022, a disabled veteran, and there were genuine vacancies for which he was eligible. Petitioner contends CSC's decision to cancel the certification list was arbitrary, capricious, and unreasonable. We affirm.

I.

In 2017, petitioner passed the promotional examination for fire captain and was placed on the resulting 2019 eligibility list.[1] In July 2022, the City promoted five firefighters from the 2019 list to the rank of captain.

On December 28, 2022, the City requested another certified list of eligible candidates for promotion to the position of fire captain in anticipation of additional fire captain retirements. The certified list had a disposition date of March 28, 2023.

---

[1] The 2019 list expired on January 16, 2023, after having been previously extended from one year to the statutory maximum of four years pursuant to N.J.S.A. 11A:4-6. For ease of reference, we refer to lists and certifications by release year, not reference number.

On February 2, 2023, CSC's Division of Human Resource Information Services (HRIS) notified the City that the 2022 certification had been issued within three months of the corresponding list's expiration date. HRIS requested the City provide evidence that genuine vacancies exist prior to the expiration of the 2019 list, and that anticipated vacancies and vacancies not genuine prior to January 16, 2023, would not be accepted given N.J.A.C. 4A:4-4.8(b). The regulation states:

> The appointing authority shall notify [CSC] of the disposition of the certification by the disposition due date in the manner prescribed by the Chairperson or designee. The disposition due date may be extended beyond the expiration date of the eligible list to fill current vacancies. Under no circumstances shall a disposition due date be extended beyond the expiration date of the eligible list when vacancies do not exist. An anticipated vacancy shall not be considered the same as an existing vacancy.
>
> [N.J.A.C. 4A:4-4.8(b).]

In response to the HRIS notice, the City confirmed in an email it had requested the certification based on anticipated retirements expected to occur on February 1, 2023 and March 1, 2023. The City explained that given the length of time it takes to fill vacancies—generally six weeks—it was its practice to request certification lists in advance of genuine vacancies. In the same email, the City confirmed no appointments were made from the 2022 certification

A-0352-23

because there were no "genuine vacancies before January 16, 2023[,] as the incumbents were still in their positions and available for work until their retirement date."

According to petitioner, he was first notified CSC had returned the 2022 certification list—where he was listed as number one—on February 15, 2023, without making any promotions. That same day, petitioner appealed to CSC, arguing that he was bypassed for promotion despite being certified first on the 2022 certification list, a disabled veteran, and scheduled for promotion on February 27, 2023.

On February 16, 2023, the City promulgated a new fire captain list. The City met with each candidate on the 2022 certification, including petitioner and advised "they would not be promoted, as their eligibility for promotion had expired and the City was not permitted to extend it," under N.J.A.C. 4A:4-4.8(b).

On March 7, 2023, CSC denied petitioner's appeal stating there were no "legitimate vacancies" and "all incumbents remained in their positions until [r]etirement." According to petitioner, on March 20, 2023, six promotions were made to the rank of fire captain from the new list, which was promulgated on February 16, 2023. On March 22, 2023, petitioner contacted CSC requesting the opportunity to "research and respond to the closing of his file." CSC advised

4

petitioner he was required to send a signed hard-copy letter to CSC requesting the matter be reopened before March 30, 2023.

On April 14, 2023, petitioner requested from CSC all documents "used to arrive at [its] conclusion." On the same date, the City wrote to CSC, in part:

> In 2022[,] the City was notified that several members of the Hoboken Fire Department would be retiring February 1, 2023 and March 1, 2023. These retirements would leave the City with vacancies in the [f]ire [c]aptain position. To prepare to fill these vacancies[,] the City requested ten . . . names from [the 2019 list] to fill six . . . vacancies. The request for certification was submitted on December 28, 2022. The request for certification resulted in [the 2022 certification,] which was received by the City on January 5, 2022.

In an April 24, 2023 letter to CSC, the City stated "[a]fter reviewing all available information and consulting with and receiving the advice of the [certification unit], the City determined that it did not have genuine vacancies on or before January 16, 2023." The letter also stated the 2022 certification "was improperly requested due to administrative error according to [CSC's] definition of . . . genuine vacancies, the certification was properly returned retaining all individuals with no appointments made, and that individuals who[se] names appear on a list do not have a vested right to appointment." Further, "[t]he City requested [the 2022 certification] following [its] normal practice to fill the expected retirements in a timely manner unaware of the

5

genuine vacancy issue."

Petitioner subsequently requested a hearing before the CSC, questioning why the 2022 certification was not used to make appointments in light of the February 1 and March 1, 2023 retirements. In response, the City maintained it had requested the 2022 certification "in good faith[,] unaware of the genuine vacancy issue that HRIS had flagged," but that based on advice from HRIS, it had determined genuine vacancies did not exist on or before January 16, 2023.

In reply, petitioner argued the retirement of two fire captains effective September 1 and October 1, 2022, established two genuine vacancies and there was another vacancy scheduled to occur on March 1, 2023. Additionally, N.J.A.C. 4A:4-4.8(b) had been enforced arbitrarily because similar concerns over genuine vacancies were not raised with respect to other certifications, including those dated April 20, 2022 and December 28, 2022. Petitioner argued the City needlessly delayed acting on the 2022 certification because it took no action between the issuance of the certification and HRIS's February 2, 2023 letter requesting documentation of eligible vacancies.

On August 23, 2023, CSC rejected petitioner's appeal in a written decision. CSC concluded the vacancies left by the February 1 and March 1, 2023, retirements had already been filled by the time the 2022 certification was

issued and the 2019 list expired on January 16, 2023, before the February and March vacancies arose. CSC determined the extension of a certification disposition due date beyond the expiration date of a list "should only be granted to fill current vacancies," and although the City "technically should not have requested the certification in the first place, its disposition of it was appropriate under the circumstances."

CSC next addressed petitioner's argument that concerns of genuine vacancies were not raised with respect to earlier certifications and appointments. CSC distinguished each circumstance from that of petitioner. In the first instance, the certification was issued with a disposition due date of July 20, 2022, and was ultimately returned August 1, 2022—both before the January 16, 2023 expiration date of the 2019 list. In the case of the December 28, 2022 certification, the disposition due date was March 28, 2023, and was returned February 13, 2023. The list in that instance had been extended one year or until a new list became available, whichever occurred first. The list expired February 14, 2023, one day after the disposition was returned on February 13, 2023, so HRIS did not need to address the issue "whether the disposition due date needed to be extended past the expiration date of the list." CSC denied petitioner's appeal.

A-0352-23

On appeal, petitioner argues: CSC acted arbitrarily and capriciously in denying his promotion; the failure to promote him violated the CSC veteran statutes and regulations; and the City's violation of CSC precedent violated doctrines of equitable estoppel and turning square corners. Petitioner further alleges the City admitted it was unaware of the necessity to have genuine vacancies prior to promoting candidates from certification lists and used the September 1 and October 1, 2022 retirements to retroactively create genuine vacancies for the July 2022 promotions.

"Our review of administrative agency action is limited." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (citing In re Herrmann, 192 N.J. 19, 27 (2007)). "An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Ibid. (quoting Herrmann, 192 N.J. at 27-28). Absent a demonstration of capriciousness, "an administrative agency's exercise of discretion is ordinarily sustained on appeal." In re Martinez, 403 N.J. Super 58, 74 (App. Div. 2008).

Moreover, "a strong presumption of reasonableness attaches to the actions of administrative agencies." In re Carroll, 339 N.J. 429, 436 (App. Div. 2001)

(quoting In re Vey, 272 N.J. Super. 199, 205 (1994)). Our review of an agency's decision is limited to considering:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [In re Proposed Quest Acad. Charter Sch. of Montclair Founders Grp., 216 N.J. 370, 385-86 (2013) (quoting Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995)).]

We are required to affirm an agency's findings of fact if "supported by adequate, substantial and credible evidence." In re Taylor, 158 N.J. 644, 656-57 (1999) (quoting Rova Farms Resort, Inc. v. Inv'rs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). "If [an a]ppellate [court] is satisfied after its review that the evidence and the inferences to be drawn therefrom support the agency head's decision, then it must affirm even if the court feels that it would have reached a different result." Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 588 (1988) (citing Goodman v. London Metals Exchange, Inc., 86 N.J. 19, 29 (1964)).

We generally give deference "to the interpretation of statutory language by the agency charged with the expertise and responsibility to administer the scheme . . . 'unless the interpretation is "plainly unreasonable."'" Acoli v. N.J.

State Parole Bd., 224 N.J. 213, 229-30 (2016) (quoting Rally v. AAA Mid-Atl. Ins. Co. of N.J., 194 N.J. 474, 485 (2008)). "If there is any fair argument in support of the course taken [by the agency] or any reasonable ground for difference of opinion among intelligent and conscientious officials, the decision . . . will not be disturbed . . . ." Lisowski v. Borough of Avalon, 442 N.J. Super. 304, 330 (App. Div. 2015) (first alteration in original) (quoting City of Newark v. Nat. Resource Council in Dep't of Env't Prot., 82 N.J. 530, 539 (1980)).

The New Jersey Constitution prescribes "[a]ppointments and promotions in the civil service of the State, and of such political subdivisions as may be provided by law, shall be made according to merit and fitness to be ascertained, as far as practicable, by examination, which, as far as practicable, shall be competitive." In re Foglio, 207 N.J. 38, 43-44 (2011) (alteration in original) (quoting N.J. Const. art. VII, § 1, ¶ 2); see also N.J.S.A. 11A:1-2(a) ("It is the public policy of this State to select and advance employees on the basis of their relative knowledge, skills and abilities.").

In the case of a vacancy, the Civil Service Act, N.J.S.A. 11A:1-1 to 12-6, provides for an examination process for promotions. N.J.S.A. 11A:4-2. When an examination is announced, minimum qualifications for the position must be posted. N.J.A.C. 4A:4-2.1(c). After the examination, an eligible list is

published ranking all passing candidates by score, with special ranking rules for veterans and for tie scores. N.J.A.C. 4A:4-3.2. That list remains in force for three years, although the CSC may extend or delay the date of its expiration. N.J.A.C. 4A:4-3.3(b).

When an appointing authority requests a list of candidates for a vacant position, CSC will issue a certification "containing the names and addresses of the eligibles with the highest rankings on the appropriate list." N.J.A.C. 4A:4-4.2(a). A complete certification consists of "three interested eligibles for the first permanent appointment, and the name of one additional interested eligible for each additional permanent appointment." N.J.A.C. 4A:4-4.2(c)(2).

In the case of a promotional list for a firefighter title, the list may be extended until a new promotional list is available for certification and appointments, however, the extended list expires when the new promotional list is issued. N.J.A.C. 4A:4-3.3(e). Certifications of and appointments from the new list cannot be made until CSC promulgates the list. Ibid. When a list has been certified to an appointing authority, it shall appoint one of the top three interested eligibles from the promotional list, N.J.A.C. 4A:4-4.8(a)(3), and notify CSC of the disposition of the certification by the disposition due date. N.J.A.C. 4A:4-4.8(b). However, no right accrues to a candidate whose name is

11

placed on an eligible list. In re Crowley, 193 N.J. Super. 197, 210 (App. Div. 1984) ("[A] person who successfully passes an examination and is placed on an eligible list does not thereby gain a vested right to appointment."). "The only benefit inuring to such a person is that so long as that list remains in force, no appointment can be made except from that list." Ibid. (citing Lavitz v. Civil Serv. Comm'n, 94 N.J. Super. 260, 264 (App. Div. 1967); Schroder v. Kiss, 74 N.J. Super. 229, 240 (App. Div. 1962)). "[T]he best that can be said" of a candidate on an eligible list is that they have "a right to be considered for appointment." Nunan v. N.J. Dep't of Pers., 244 N.J. Super. 494, 497 (App. Div. 1990).

Here, petitioner was placed on the 2019 eligible list after passing the promotional examination for fire captain in 2017. The 2019 list was set to expire on January 16, 2023. After several appointments were made to the position of fire captain, petitioner was first on the certification requested by the City and issued in December 2022. The December 2022 certification had a disposition due date of March 28, 2023. However, because there were no actual vacancies as of January 16, 2023—the original expiration date of the eligibility list—the December 2022 certification was disposed of in accordance with N.J.A.C. 4A:4-4.8(b), which provides "[u]nder no circumstances shall a disposition due date be

extended beyond the expiration date of the eligible list when vacancies do not exist."

On this record, we are hard-pressed to conclude CSC's decision was anything other than consistent with the applicable law, and amply supported by the evidence, and reasonable. The City confirmed no appointments were made from the December 2022 certification because there were no "genuine vacancies before January 16, 2023[,] as the incumbents were still in their positions and available for work until their retirement date." CSC based its denial of petitioner's appeal of the City's disposition of the December 2022 certification on the express language of N.J.A.C. 4A:4-4.8(b), requiring a disposition due date not be extended beyond the expiration date of the corresponding eligible list if genuine vacancies do not exist. We owe those findings deference. And, although the City had confirmed its prior practice of initiating the promotional process for fire captains one to two months in advance of any genuine vacancies—to prevent extended vacancies in the leadership positions and streamline the promotional process—we discern no error in CSC's determination the City's prior practice violated CSC's regulations.

We therefore reject petitioner's argument the City could have extended the eligibility certification to appoint him to fill vacancies that were anticipated to

13

arise in February and March 2023. Accordingly, CSC's determination not to extend the December 2022 certification in the absence of any genuine vacancies is unassailable. Similarly, petitioner would not have been eligible for promotion to vacancies occurring in the fall of 2022, prior to the December 2022 certification.

Lastly, petitioner argues "the City's violation of civil service precedent to deny appellant a promotion violates the doctrines of equitable estoppel and turning square corners." Petitioner further avers equitable estoppel requires his retroactive promotion in "the interests of justice, morality and common fairness."

The estoppel doctrine may be invoked against a municipality "where the interests of justice, morality and common fairness clearly dictate that course." Gruber v. Mayor & Twp. Comm. of Raritan, 39 N.J. 1, 13 (1962). "The essential elements of equitable estoppel are a knowing and intentional misrepresentation by the party sought to be estopped under circumstances in which the misrepresentation would probably induce reliance, and reliance by the party seeking estoppel to [their] detriment." In re Johnson, 215 N.J. 366, 278 (2013).

Here, only one week passed between CSC's letter to the City requesting "evidence that genuine vacancies existed prior to the expiration of" the 2019 list

and the City's response returning the certification with no appointments made because there were no genuine vacancies at the time. The City continuously reiterated its previous practice was committed in good faith, with no intentional misrepresentation.

On this record, petitioner does not provide, and we are not persuaded there is any evidence the City or CSC knowingly and intentionally violated CSC precedent and rules to warrant equitable estoppel. Furthermore, CSC has no obligation to retroactively approve promotions in violation of the plain language of its regulations. To the extent we have not addressed any of plaintiff's arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-0352-23